Good morning, Your Honors. Good morning. I'm Michael Brown. I represent the Point Reyes Sea Shore Lodge and Thomas and Jeff Harriman. I'd like to reserve 10 minutes for rebuttal. All right. There's a clock right there, and I'll try to help you out as well. Thank you. The primary issue in this case, I believe, is the timeliness issues of the compliance with Rule 54-6 of the local rules or 54-D-2 of the federal rules. Since the Northern Districts has adopted essentially the same standard, time standard, as the federal rule, federal rule of civil procedure, that is, that is controlling. This Court has long held that local rules are binding on the judge of the district court and the parties and the court of appeal. Consequently, the issue then becomes whether or not the dismissal with prejudice on March the 24th was a terminated — did that terminate the action entirely. My argument is that it did under Pejistad or Kokkonen or any number of cases. It terminated the action with prejudice. Consequently, the time to file the motion, not necessarily hear it, but the time to file the motion began to run 14 days after the 24th. There is absolutely no case law cited by the appellee that changes that rule. There is abundant cases in other jurisdictions and also in the Second Circuit that support the rule that a dismissal with prejudice begins to run — the time begins to run, and a party who is seeking attorney's fees must request an extension of time. Even the comments to Rule 54-C of the local rules provides that the parties should be aware that the time is short. If they are unable to agree that they should file a motion for an extension of time under Rule 6, they can either stipulate, or if the parties can't stipulate to an extension of time, the — the applicant may move the court and the court will consider it and thereby extend the time to file the motion. In this particular instance, there is no indication in the record that any attempt was made to extend time. There is no moving paper after the 24th of March, 2004, that requests an enlargement of time to file a motion for attorney's fees. In walking through the various procedural aspects of this, I'm trying to understand how this would work as a practical matter. So let's step back, and you have this dismissal. That was a non-appealable order, correct, by virtue of the settlement? No, that was an appealable order. The dismissal with prejudice under — terminated the action. Correct. That is an appealable order. Was — was — did the settlement waive an appeal? No. The — the settlement — the procedural part of this is somewhat complicated in that the settlement was — the terms were negotiated on March the 12th. The dismissal with prejudice was on March the 24th. Correct. So that terminated the action. The finalization of the settlement agreement did not occur until May the 10th. The Court had already lost subject matter jurisdiction under Hadjistad over the settlement agreement as of March 24th. That is confirmed by O'Connor and a recent case of this circuit that I just found. Well, look at the — on page 14. The — if that isn't a conditional order, I don't know what is. Will you explain why that is not conditional? That is the same language used in Hadjistad, exactly, and in O'Connor. No. I want you to explain this language, why it's not conditional. The language, assuming that it is conditional, the conditions were confirmed. The conditions were of the settlement. Was the case settled? No. That's not the condition. The condition is that if they don't agree, the whole thing is off. No. Shall be vacated. That's not what it says. It says that the case is settled. The case, when we talk about the case, the case are the substantive issues in the case. The substantive issues were resolved on — were resolved on March the 12th and confirmed on May the 10th. So all the conditions necessary for dismissal of the case had occurred. Attorney's fees are not part of the case. The case law in this jurisdiction, every jurisdiction across the country say they are collateral. They are not part of the case. The case was dismissed. The conditions for dismissal were affirmed by May the 10th. So it was a done deal. There was no — there was no issue on the merits for the Court to decide. There is absolutely no way to distinguish this case from O'Connor or Hedgestad, period. And this also conforms with Poconin. So this is not — while the Court attempted to retain jurisdiction over the issues under the relevant case law in this jurisdiction, it did not. However, even if you consider it to be a conditional dismissal, the conditions were met. The case, the settlement agreement was signed. So there was no dispute as to the settlement. It was — Well, if you consider it conditional, then to win your argument, you would have to have it relate back, correct, to that date? I don't consider it conditional. But you would have to have it relate back to prior to the time the Court lost a subject matter jurisdiction, which you cannot do. The parties, according to the case law in this jurisdiction, also cannot vest the Court with subject matter jurisdiction after the fact. If the — Suppose he had discovered his, you know, what you're saying, the 30 days, you know, and he forgot to do it. And he said, well, I'm not signing the settlement. So you would put in a clause that, you know, that it reserves my right, stipulate to, you know, to agree to an extension. You're saying even then the district court wouldn't have authority to award fees? Is that the implication of what you're saying? Well, according to the case out of Ledecky, out of the Second Circuit, the answer is that is correct. The Court lost the — Okay. I'm not sure you're reading that right. I mean, it really sounds like game playing to me, to be blunt about it. Well, if the — how can there be game playing? The issue is, did the Court — Do yourself admit that the issue of legal fees is separate from the settlement? Absolutely. Absolutely. So why isn't it game playing? To take advantage of this, you know, because they forgot to ask the judge, which lawyers normally do, and say, Judge, can I have 30 days to apply for legal fees? And I say, sure. You know. Well, then are the — you're — in order to reach that conclusion, you're going to have to ignore all the procedural rules set forth in the Northern District, period. Rule 6 says you have to — if you want an extension of time, you have to apply for it. That's — and then the judge can grant it or not grant it. That was not done. So at some point in time, are the local rules relevant to this particular proceeding? And if they're not, we lose. But if the local rules are applicable, there is no way that the plaintiff complied with the local rules. Well, but if you look at it as a practical matter, which is that even if there's a dismissal, and even if that's not conditional, the fact is if attorneys' fees are separate from a judgment of dismissal, and by agreement they're going to be negotiated, correct? Yes. And the settlement agreement is signed when? May 10th. May 10th. And that settlement agreement says you're going to negotiate your attorney's fees, correct? Or he has to file a motion. What do you mean? Or he has to — if you can't come to an agreement. Right. Right. But you're saying, well, now, even though this was May 10th, really, you should have filed your motion for attorney's fees previously. That's the only thing you're asking, correct? No. There is a mechanism. The rules say that if you're — attorney's fees in this case were disputed from the get-go. Nobody could agree. Okay? So negotiations were really irrelevant, because neither side was willing to compromise on the fees. So, but that being the case. Well, the settlement agreement says you might try by negotiation. You never know. Anything can be settled. That's correct. However, there's a mechanism. If — going in, you have to use — if the rules say that you have a right to apply for an extension of time, and it was obvious that the parties — obvious — were not in agreement as to fees, and it's up to the plaintiff to preserve her right to fees, then she can apply to the Court for an extension of time by merely saying we are still in the negotiations, Your Honor. We need an extension of time to file the fees. The 14 days are running. I need an extension of time. Or you can ask the opposing side to stipulate to an extension of time so that there is a record that the — to the Court granting an order. There is absolutely no case law that I'm aware of that allows a district court to grant an extension of time that's not put on the record by an order. None. There is no order in this case, period. So — so no matter — no matter — whether or not you consider it game playing or not, the local rules apply to this case, and it's up to the movement to ask — to do something. It's not up to the defendant. All the plaintiff had to do was ask, and he did not do so. At any point in time, at some point — at some point in time, there has to be — the Court has to make a — there has to be a record that the Court made a determination that you must do this by a certain time or — I mean, I just want to understand the timeframe. May 10th, the settlement agreement is signed, right? Correct. And August 12th is when certified that they couldn't come to an agreement, right? No, we couldn't. Well, that's when he certified we couldn't come to an agreement. All right. I told him a long time ago we couldn't come to an agreement. Let me ask my question straight out. Did you have any discussion about settlement after May 10th of legal fees? Sure. I kept saying, Father, you're right. So why isn't this game playing? Why is it game — it's not game playing if the party who sent it to you — Under your theory, it was too late. I was not involved. I was not involved in the case. Well, I don't mean you personally. I meant the — Well, let's take a look at — let's take a look at this logically. The parties had nothing to do with game playing. The court is the one who dismissed the action. Period. The parties didn't ask. The court dismissed the action. That starts the time running. If that — if a dismissal with prejudice is not a termination of litigation, then the Ellison case law that says that is not, because every other jurisdiction says that it is. Period. Now, if we move from that — But if you look at the calendar, the six-month list, his calendar, he's, in effect, basically done in the party. He should have just waited until he heard one way or the other, and then you would — you wouldn't have an argument, right? That's correct. There's another way, though. He was — you know, I don't know. I guess it would be — if you're right, there would be a warning to district judges that if they're trying to clean up their calendar, don't do it because — Correct. There is — there is another way. She could have dismissed it without prejudice. She didn't do that. There's an — there's still another way. Very simple. If — if — and drawing your — and the Court makes a valid point, counts could raise the motion pursuant to 60B-6. And said, okay, you know, this was inadvertence. We'd like you to vacate your order. But he has to file a moving paper, and then I could have a chance to object. I don't know whether in the Ninth Circuit, of course, or the Second Circuit, we have a standard procedure that if we hear about a settlement, we enter an order closing the case administratively with leave to reopen, assuming the settlement doesn't go through. But it happens under that, under your theory with this. You have to go back and take a look. It's very interesting, because if you take a look at the — the case law developed in this circuit, given O'Connor, and even the last Seahawk case that was just decided in 2006, the — it is a catch-22. If it's dismissed with prejudice without incorporating the — the settlement agreement, you lose jurisdiction. But it also starts the time. Even if the Court had — I'll go back and say even if the Court reserved jurisdiction, specifically stating I have a right to enforce the settlement agreement, the 14 days would begin to run. The party had to do something. And it could — it could have just written a court, but they — they had to — he had to do — Mr. Cohen had to do something. He could not just do nothing, because he got notice that it was dismissed. That's a red flag. He can say, whoops, but that's a dismissal with prejudice. It's a dismissal with prejudice, period. And so the burden falls on the movement to guard the record. And he is the movement. Now, the fact that the Court might have made a mistake, why should defense counsel bear the burden of a mistake made by the Court? If Mr. Cohen were to put prejudice, you were expected to pay legal fees. You thought that — you signed a settlement agreement that says if we can't agree, we're going to ask the judge. Correct. Correct? Correct. And you signed that in May. Is that correct? Correct. So at that point, when you, meaning your — on behalf — someone on behalf of your client signed the settlement agreement, the client fully expected that if they couldn't come to an agreement, there would be a court order as to fees, correct? Correct. So how are you prepared to do that? What's the problem? What's your problem? Well, in this case, we didn't expect to get — we didn't expect to get stuck with $180,000 worth of attorney fees. Okay. But that's the amount of — that's the amount of fees, not the fact of fees. And I, you know. No, Kander. The dispute was over money. Now we're really getting to the bottom of it. Over money. The — but if you're going to — if you're going to develop the rules, and this is why we're here on appeal. I didn't — the issue — the issue of the rules are — there's a lot of cases that have come down where people have lost — in the Port of Stockton case. The City of Stockton lost $160,000 worth of fees because they didn't do it in time. In the Tancredi case, the metropolitan wife lost $200,000 in fees, and they only missed it by a week. So — so, yes. But those courts — those courts said the only way to get fees in the Federal courts are by following the rules, period. If you don't follow the rules, you waive. And so — So, I mean, the bottom line is, if we accept your argument that a rule is a rule is a rule, and your client gets a windfall because of a mistake by the district judge, or because of an action by the district judge. And? Waiver by the plaintiff. Why isn't — why is your — why is not the plaintiff required to read, understand the rules, and apply the rules to his particular case? It's his burden to do so. So, why would district courts — Well, to be honest with you, any plaintiff reading what the judge wrote would have thought he had the time to do it. I mean, I read it as a conditional thing anyway, but — If you take the — well, the — I guess, you know, he was done in by the district judge, if you're right. Can I ask you another question about that language? I got another. Can I respond to him quickly? Yes. The Bowles case that just came down by the Supreme Court said that even though the district judge misled the guy on a habeas corpus proceeding, it's too bad. Okay. So there are ample situations where the district court might even mislead a party but there's no relief. If the rules say what — you must comply with the rules. But anyway, excuse me, Your Honor, I just want to — Eggstead. Yes. There was an actual dismissal with prejudice in that case, correct? That was Judge Hogan. Just the same — same language. Is the language exactly the same as here? Almost to the word. So much so that there would be distinction without a difference. The same with — it's even better in O'Connor, where the court says I intend to oversee this, I'm going to be the settlement czar. And the — my circuit said you lost jurisdiction. There was a dismissal. The time began to run. This was not a — O'Connor wasn't a fee case, but it concerned the jurisdiction of the court. Now, Eggstead is right after Conconin, and we're just in the early stages there of how to write the language, correct? Correct. Well, you have three decisions that came down. You have Eggstead, O'Connor, and then there's a quiescence. I couldn't find anything of any significance after O'Connor especially. And then the latest one being the Seahawk case. Where you reaffirmed Eggstead and O'Connor and basically said there's — the distinction between enforcement and interpretation is one we do not accept. It is if you lose jurisdiction, you lose jurisdiction. You didn't save five minutes, but we didn't help you either. We took up all your time, so we'll give you some time for rebuttal. Thank you very much. Good morning, Your Honors. I'm Sid Cohen, and I represent Plaintiff Anna Pelley, Helene DeLille. At the outset, I'd like to point out that there are several alternative bases for this federal and local rules for filing a motion for attorney's fees and costs from a final and appealable judgment or order. They're as follows. And before that, we have two situations in here. We have at one time the appellant was arguing that the March 24 order was the operative order. Another time he's arguing that the July 19 order is the operative order, which starts the 14 days from running. But with respect to the March 2004 conditional dismissal, and it was a conditional dismissal because it said if the settlement is not consummated, if the matter is not — if the settlement matter is not resolved, then just — you may petition the court or request the court to vacate the dismissal and we'll put it back on the active calendar. And that's exactly what happened. So because of the — Could you stop? Could we stop there? Let's take that. Let's start with the March 23, 2004 order. The judge says it's dismissed with prejudice, however, and then goes on basically to say if it doesn't work out, then the order gets vacated, correct? Okay. Within 90 days. Right. And — but Hegstead says the action is dismissed with prejudice, and then for good cause shown, you can have it set aside if it doesn't work out. What's the difference? Well, in this case, the court said if the settlement doesn't occur — For any reason. Then you can — Right. For any reason. And it — the whole matter didn't settle within 90 days. No, but you see that — I mean, you can — but now we're splitting hairs. I'm not saying whether — you know, Konkonen threw everybody for a loop, frankly. You know? I mean, people — district court judges have been doing this for years. Right. It's a way of managing their calendar. Exactly. Well, they've been doing this, and they've also done it for other reasons. And then we get Konkonen, and then now we have Hegstead. And I have a lot of sympathy for the situation, but I'm having trouble really distinguishing this from Hegstead. Well, what happened here, Your Honor, was at the settlement conference on March 12th, the parties placed on the record the settlement of the adjunctive relief and damages, and they placed on the record that the court retained jurisdiction to enforce any settlement agreement that occurred as a result of it. What happened after March 12th was the parties and the counsel for the parties went through several months, and it's set forth in the brief, and it's in the record, in which they differed as to what the terms of the settlement were. So they spent until May 10th, or beyond that even, trying to determine what the settlement on the adjunctive relief was. And at one point in my timesheet, it says this is the sixth settlement agreement draft that the other side has presented as we go back and forth. But did anybody go back to the court and say, look, vacate this order of March 24th because we're in murky waters here, and this could get us right into Konkonen? It was within the 90-day period that the court said if it's not resolved within 90 days. No. I'm sorry. I'm asking you, did anyone go back and say, not 90 days, but reconsideration, fix this? This is a problem, because when we go down the road with this order, we could find ourselves in the Ninth Circuit trying to sort this out. Did anybody go back and say that? No. What we did was we – what I did was I relied on the conditional dismissal, which said if the matter is not resolved within 90 days before the 90 days runs, I requested that the court vacate the dismissal and restore it to the active calendar for further proceedings. And that is what the court did. The court didn't say this is a final appealable dismissal. The court said this is – No, they never do, because they think it's not. But then Konkonen changed the whole landscape, didn't it? I don't think so. Why not? I think that, as I set forth in my brief, that if you have a conditional dismissal, which is not a final appealable order until it becomes final, and it doesn't become final until the 90 days runs. And I cited a couple of cases which, you know, support that proposition. So even if, for example, from March 24, the parties – from March 24, 14 – within 14 days after that, the parties did not have an agreement on the – on the injunctive relief and the – well, they had an agreement on the damage – on the injunctive relief work. They were going back and forth. They said, yeah, the record says this, but, you know, I interpret it this way, you interpret it this way. We need to reach an agreement. So there really wasn't an agreement during that timeframe within 14 days. So – and because the court made it a conditional dismissal and said if within 90 days the matter is not resolved, you can request the court to vacate the – vacate the calendar, which is what happened. So it never became a final appealable order. And the second point on the March 24 dismissal issue is that appellants have waived the issue of whether or not the March 24, 2004 conditional dismissal is the operative dismissal which governs the right of misdemeanor attorneys by their conduct during the course of the litigation in the district court of treating the attorneys' fees issue as alive and well and proceeding over many months from the March 24 conditional dismissal order, as well as they did the same thing with the injunctive relief. They treated it as not settled. Well, but if – it wouldn't matter what party's conduct is if as a matter of law an order were final and appealable, correct? Probably not. But it really wasn't. So, I mean, I'm just saying I'm not sure how that argument changes anything. It either is or it isn't under the statute. Well, I think that the appealable, I guess. Pardon me? I'm trying to figure out if it is appealable, what's appealable? What would have been the issue? There is nothing that's appealable. That's another point that I make. It's not an appealable order because if it's – if the parties stipulate to the settlement, the law is, is that the party cannot appeal its own stipulation. So the appealability of this would have been that the case shouldn't have been dismissed   Well, the appealability, the appealability would be if they had a settlement agreement that was placed on the record, which it was, which they then later, you know, parties got into disputes as to what it meant, then it wouldn't be appealable. But I think that the point, you know, that we're talking about here on the stipulation and order is the other basis that they're arguing, July 19. What actually happened here is they never discussed the March 24 order. They went along, and even in a June 17, in a June 17 case management conference, Mr. Brown signed the case management conference, which said the parties are trying to negotiate attorney's fees. If they can't resolve it, they expect to ask for a further settlement conference. And if they can't resolve it at a further settlement conference, then they expect to make a motion to the court. So I think during the whole process, the notion was that this was not resolved. But I want to, I want to move on to a couple of other points which were raised in the, in the reply. As I think as, as you, Judge, said, that this is a way to manage the caseload. The cases of the orders entered in March, we got to get the CJRA thing by the end of March, so that's why. This goes to the July stipulation and order of dismissal. There was a stipulation in court order which extended the time so as to permit a process which, if successful, would settle a fee aspect of the case without the need for a fee motion, and the time and expense of the parties and the court. Appellants would have you adopt a rigid rule to the effect that Mr. Lill specifically requested an enlargement of time pursuant to local rule 6.2. That's basically their point. They say they didn't follow the local rule 6.2, which says either stipulate and request enlargement of time or make a motion. First, with respect to that, at the settlement conference with Judge Tinn in March 20, in March 2004, the parties placed on the record that the settlement was court enforceable, and that, that distinguished it from Hagstead in which it wasn't court enforceable, and that's why the court didn't have jurisdiction. And that the court would retain jurisdiction to hear and render a decision on a motion for fees if the parties could not negotiate a settlement. Second, and this is a point which I really just picked up in, in reading Mr. Brown's brief in the transcredit case, I think it was, that he cited. And that is that Federal Rule of Civil Procedure 83, which deals with local rules by district courts and judges' directives, states at A2 as follows. A local rule imposing a requirement of form will not be enforced in a manner that causes a party to lose rights because of a nonwilful failure to comply with a requirement. Now, here Local Rule 6-2A, upon which the defendants rely, is entitled form and content, and is subject to this Federal Rule of Civil Procedure 83. And any failure was merely one of form in not accompanying the stipulation and order with a declaration which set forth the reasons in the declaration why they wanted an extension. It was in the stipulation and order which the judge signed, and the judge said that the 14 days did not apply. But it wasn't in the form of a declaration. It was merely in a stipulation. Now, that brings me to my next point, and this also came up when I was evaluating the Tanskredi case, which is a Second District case. And this is on the question of excusable neglect. Now, the appellant cited Tanskredi to support his position that, absent a statute or order of the court, such as a local rule, the district court was required to find excusable neglect under FRCP 6b-2 to extend the time for filing a motion for attorney's fees under Rule 54. Now, in fact, Tanskredi actually supports Ms. DeLille's position. In Tanskredi, Defendant Metlife made a motion for fees 7 days after the expiration of the 14-day deadline imposed by FRCP 54d-2b. And what the court said is that the principle of law that the court enunciates in Tanskredi and its holding was that the excusable neglect standard of Federal Rule 6 qualifies a court's Rule 54 power to extend the time for filing an attorney's fee motion after the deadline expires. That's what the Tanskredi court held. It did not hold that the excusable neglect standard of Rule 6 qualifies a district court's power to extend the time for filing a fee motion before the deadline expires. In this regard, the appellate court stated that we expressly reject Metlife's argument that Rule 54's introductory clause, unless otherwise provided by statute or order of the court, gives district courts carte blanche to extend the time to move for attorney's fees after the deadline expires. In our case, a Rule 6 finding of excusable neglect does not apply because the court's decision was made before any deadline occurred. I also want to note that we do not think the 14 days began to run in any event because the stipulation and order of dismissal was not appealable, an appealable order by either plaintiff or defendants, and so the 14 days wouldn't start to run anyway. But even if this Court were to conclude that the district court cannot extend the 14-day timeframe before the expiration of 14 days, or if they conclude that it was done after 14 days without finding excusable neglect under Rule 6, here there was excusable neglect for not filing a motion within 14 days. And let me ask you how this played out in the district court. I'm looking at the judge's August 26th order, at which point she says, we're not going to reopen the case. Just file your motion. And then I will hear on attorney's fees. Okay. August 26th order is not appealable, really, either. But how did the issue of the 14 days and the local rule get played out in the district court? Do we have an order from her addressing that issue? No. We have three things. We have basically four things. We have the March 24 dismissal, in which she said if the matter is not resolved within the 90-day period, the matter, not just, you know, basically the whole case, okay, then we'll vacate it and restore it to the calendar. Within the 90 days, that's what I did. We have the July 19 order. Correct. Okay. Which you're familiar with, I guess. In which she retained jurisdiction and said she'd hear a motion on fees and so on. We have her August order, in which she says, I'm not going to reopen the case, because I asked the case to be reopened a second time, you know, because the matter wasn't resolved. And she said, I'm not going to reopen the case. But any motion that you file for fees, I'm going to hear. Yes, my point is this. Is that no time during all this sequencing of orders did Point Reyes say, so what? It doesn't matter because your 14 days has expired. Did they ever say that? I don't believe they did. Or any document in which they make that argument in the district court? I don't believe they did. Is that a waivable argument, then? I don't believe it. If they didn't tell the district judge that they were beyond their 14 days? Waived? Well, one of the arguments I made was they waived it because they didn't bring up to 14 days. Rather, they proceeded along the same baseline that I was proceeding, along the same baseline that the Court ultimately found was the way that the parties were proceeding. I guess what I'm trying to say is people always seem to start with the most complicated way of looking at things. Maybe we try to start at the other end too often, but we're trying to see, to sort it out as a practical matter, if all this talk about whether there's excusable neglect and all that is kind of irrelevant if that issue has never been raised before the district judge, correct? Excusable neglect I did raise in the district court, and that's what I'm coming  Basically, as you'll see in the papers, what I at oral argument on the motion in the district court on that issue, I said if the court finds that there was a 14-day requirement, I want to make a Rule 60B motion or a Rule 6 motion, you know, both. And the court said, and it's in the papers, the court said on the record, and it's quoted in the papers that I submitted, I'm not going to find it untimely, meaning therefore you don't have to make those motions. So what I'm saying is that Can we remand it to give her the opportunity to make that? Well, that's one. I mean, I'm hoping it doesn't come to that point. But I'm saying that in these papers that I filed here, I said if the court determines I think we're trying to help you out without doing violence to the rule of law. And I said if the court determines that the 14-day rule applied either in March or from July order, which I hope the court doesn't, but if it does, I'm saying that either this court should make a finding of excusable delay on the record as they review the record, or if this court does not think it can make it. We definitely can't do that. I can tell you that. Young said it's a district court. If the court doesn't think there's sufficient information before to do that, that it should remand the matter to the district court for her to make that determination. And basically that's what the cases say, you know, is an available remedy. So you made reference to a conference in June where the thing was sort of set out that if you couldn't settle, then what would proceed. The judge was present at this conference, I assume, right? Well, what happened was, what happened was, is when the court vacated the March 2004 dismissal and set it back on the active calendar, she called for a case management conference. And in the case management conference, you have to submit a case management statement. And it's cited in my brief and quoted in my brief that on June 17th of 2004, when the case management conference statement, which was filed, stated, and it was signed by Mr. Brown, it was signed by me, that the parties are negotiating the attorney's fees and cost aspect of this case. If the matter is not resolved by negotiation, then the parties expect that they will ask the court to submit the matter back to the magistrate judge for a further settlement conference on attorney's fees. And if it's not resolved at settlement conference on attorney's fees, thereafter the parties, thereafter the plaintiff will make a motion for fees. So when she conducted the July 2 case management conference, she had that in her possession. And when she made her July 19 order of dismissal, retaining jurisdiction and saying that I could, you know, make a motion for anything, the parties are going to, and which also said the parties are going to negotiate fees and if they can't reach an agreement, then thereafter the motion. And that just kept, in all the orders, we keep seeing that language, that fees are down the road. Right. We were, you know, I was basically going down this primrose path, believing, and I still believe, that I did everything correctly, that I did within the 90 days move to vacate because the matter had not been settled, and after the July 19 order. And, I mean, during this whole period, my time sheets are going, as the papers show, my time sheets are going over to both defendants' counsels, first in April and then in late May, for them to review. And they had them. And that also raises, you know, the last point. You said, what's the prejudice? I mean, I think it's very clear that there's no prejudice. The reason for the 14-day rule, there's several reasons. One of them is, is there prejudice to the other party? There is no prejudice. And they knew exactly what was going on the whole time. They had my time sheets. The reason of, you know, having a 14-day rule so that any attorney's fees can be appealed on the merits, there was no right to appeal on the merits, so that doesn't apply. And if there was no right to appeal on the merits, then there's no 14 days that begins to run in the first place. Because the rule says that 14 days from a judgment or appealable order, a judgment which includes an order, and it has to be appealable, there was nothing to appeal. There was nothing to appeal in March, when the parties placed the settlement on the record and said the court would retain jurisdiction. And there was nothing to appeal in July, when the parties filed a stipulation with the court. And the court ordered, signed the stipulated order on the only the injunctive relief and damages aspect, and signed the stipulation and order on that, which was not appealable. They couldn't, I couldn't appeal, defendants couldn't appeal, and retained jurisdiction to make a motion to the court, to hear a motion to the court for attorney's fees, if the negotiation process which the parties were engaged in did not result. Thank you. We have your argument in mind. Okay. Yes, Mr. Brown? We'll give you a minute for rebuttal. I have 20 minutes, that's why I continued on. There are some procedural matters that need to be cleared up. First of all, the March 24th order was never vacated. It was confirmed that it was the operative order in the judge's final order. So the March order was never vacated, period. Her final order that has been appealed, she confirmed. Can I just ask a question? If that March order had simply said 90 days for the settlement on the basic underlying case and attorney's fees, would the judge did it sua sponte, without any request, and you have 90 days to do it, would there be any violation of the local rule? I am not certain. Without a request or stipulation of the parties, I don't know, because the way the rule is written, it requires a motion and so an order. So I'm not sure. But to address His Honor's question about my raising the issue, when I first got Mr. Moore's moving papers, I asked for an extension of time, because I finally got his points and authorities, and I alerted the Court on February the 8th, as soon as I got I requested an order extending time. And in that ex parte, that would be document page 138 of the exhibits. And paragraph lines 23 through 28 on page 140, I specifically tell the Court I believe there is a timeliness issue that needs to be addressed. At that time, I had not done the research, and so in my request for an extension of time, that I did, that I filed, I alerted the Court that there was a timeliness issue, and that was several months. Any other time? You bet. When I filed my moving papers in opposition, I alerted the Court that there is a tremendous The date on that first thing you just referred to? That was, according to my documents here, I dated it February the 8th, 2005. The hearing took place, I believe, in April, and the decision came down in August. And then you said in your moving papers? I did. That was my issue. One of my central issues in opposition to the fee motion was compliance with Rule 54. And all candor, I did not have at that time Hagestad, and I had not researched to find that case. But I did raise it again in oral argument, that the Court lost jurisdiction as of March 24th on the original dismissal, and because I didn't believe that I thought the case was over with at that time. But I was not involved during that period. Let me just ask you one final question, and that is, of course, Rule 54 permits that if you have an order of the Court, then you don't have to comply with the 14 days. Why wouldn't the Court's orders in the summer of 2004, in which she said, you know, file your motion, I'll hear it, why isn't that tantamount to an order? I knew this was going to come up. Why? Because the local rules, the local rules are default. If she does not state a time, then the local rules will apply. He had three situations to file his moving papers, according to the local rule. And I'm giving you – I will assume that the – let's assume for argument. I do not concede it. I believe the case was over on March 24th, but let's go to – let's go to July 19th. And the Court at that time knew that all substantive issues had been disposed  of. When all substantive issues are disposed of, the time – that is the time that you must file your fee motion within 14 days. She merely reserved jurisdiction to hear the motion. Then the local rules become a default, just like if there's no local – if there are no local rules, Rule 54b2 becomes the default. So in this situation – At that moment, she said, I'll give the plaintiff 90 days. She didn't, though. If it was in the order – But you can see that she might not have had that authority either. He had to somehow move within 14 days to request the 90 days. I do believe that, according to the law, that is correct. Okay. All right. Thank you. One other thing I wanted to point out. I think we've got the – it's well briefed. We have a lot of papers on it. You both raised interesting arguments in terms of both what happens after the Supreme Court case and also the local rules. So we appreciate your arguments. The case of DeLille v. Point Reyes is submitted. Thank you. We're adjourned.
judges: Noonan, McKeown, Trager